IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SYDNEY PERRY,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD CARLIN, M.D., P.C., and<br>SCOTT BAXTER<br><br>    Defendants. | CIVIL NO. _____<br><br><br>**JURY TRIAL REQUESTED** |

## **COMPLAINT**

Plaintiff Sydney Perry files the following Complaint against Richard Carlin, M.D., P.C. ("Carlin Vision") and Scott Baxter ("Mr. Baxter") seeking damages, equitable relief, attorneys' fees, and all other remedies available under the applicable law, as set forth below.

## **Nature of Complaint**

### 1.

This action is brought pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), seeking lost wages, compensatory and punitive damages, attorneys' fees, and costs against Defendants based on Ms. Perry's claims of Title VII sex discrimination/sexual harassment and

retaliation. This action also seeks compensatory and punitive damages under state law for negligent retention against Carlin Vision; and for intentional infliction of emotional distress and battery against both Carlin Vision and Mr. Baxter based on the sexual harassment, offensive touching, and lewd comments inflicted on Ms. Perry by Mr. Baxter during her employment with Carlin Vision as well as Mr. Baxter's continued stalking of her after her employment ended.

## The Parties

2.

Ms. Perry is a citizen of the United States and a resident of the State of Georgia, currently residing in Walton County. She is a former employee of Defendant Carlin Vision, having worked at Defendant's location in Snellville, Georgia in Gwinnett County. Ms. Perry was, at all times relevant hereto, an employee within the meaning of Title VII. Ms. Perry submits herself to the jurisdiction of this Court.

3.

Defendant Carlin Vision is a professional corporation organized under and qualified to conduct business in the State of Georgia, where it maintains and operates the vision clinic at which the events giving rise to Ms. Perry's claims occurred. Defendant may be served through its registered agent for service of process, Richard

Carlin, at 2347 Lenora Church Road, Snellville, Georgia, 30078. Defendant was, at all times relevant hereto, an employer subject to Title VII.

4.

Defendant Mr. Baxter is an individual citizen of the United States and of the State of Georgia, residing in Georgia county unknown at this time. Mr. Baxter is and was, at all times relevant hereto, an employee of Carlin Vision. Mr. Baxter is subject to personal service of process wherever he may be found, or abode service under Federal Rule of Civil Procedure 4(e)(2)(B) at his residence.

**Jurisdiction and Venue**

5.

Ms. Perry's claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 2000e-5(f)(3), and other applicable law. This court has supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

6.

This Court has personal jurisdiction over Carlin Vision because Carlin Vision is organized under the laws of Georgia and has its principal place of business in Georgia.

7.

This Court has personal jurisdiction over Mr. Baxter individually because he is a resident of the State of Georgia.

8.

This Court is an appropriate venue for all of Ms. Perry's claims pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) as the judicial district in which the events and omissions, including unlawful employment acts, giving rise to Ms. Perry's claims occurred.

## Administrative Proceedings

9.

Ms. Perry filed a charge of discrimination with the EEOC on June 21, 2023, setting forth claims of sexual discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). That Charge was timely filed less than 180 days after the acts of discrimination and retaliation identified in the Charge.

10.

The EEOC issued a Notice of Right to Sue on December 6, 2024, and Plaintiff files this Complaint within 90 days of receipt of that Notice.

## The Facts

### Ms. Perry's Employment History

11.

Ms. Perry began her employment for Carlin Vision on or about October 24, 2022. Carlin Vision was Ms. Perry's employer within the meaning of Title VII during all relevant times.

12.

Though she was initially hired to work as a greeter in the facility's Optical Department, her title later changed to Optical Concierge. She maintained this title until her termination in May 2023.

13.

Ms. Perry's duties in her role involved interacting with customers, greeting them on arrival and assisting them with their visit, as well as interacting with opticians and other employees of Carlin Vision, among others.

14.

Ms. Perry was nineteen years old during most of her employment, working primarily with middle-aged adults in the Optical Boutique.

15.

Mr. Baxter was employed by Carlin Vision as an Optician in Defendant's Optical Department throughout the time in which Ms. Perry was employed.

16.

Upon information and belief, Mr. Baxter is still employed by Carlin Vision.

Targeted Acts of Sexual Harassment Toward Ms. Perry

17.

Ms. Perry was subjected to unwelcome verbal and physical harassment based on her sex by Mr. Baxter throughout her employment until her termination in May 2023.

18.

Mr. Baxter would regularly comment on Ms. Perry's appearance, calling her beautiful and talking about her breasts and body.

19.

As an example of the verbal harassment that Mr. Baxter inflicted on Ms. Perry, he once said to her "your penis is sticking out" after looking at Ms. Perry's body and noticing that her pants zipper was poking out instead of lying flat after she had come out of the bathroom.

20.

Mr. Baxter regularly made comments about stalking new, young female employees online. He bragged about his wife being a patient at Carlin Vision and that he went into her file to find her contact information.

21.

Mr. Baxter regularly made comments with a sexually suggestive tone of "I wish I wasn't married" when young, attractive female patients walked in.

22.

At one point, Ms. Perry's coworker, a young female employee who worked at the front desk and with whom Ms. Perry did not work directly, asked Ms. Perry if Mr. Baxter made her feel uncomfortable. Ms. Perry answered affirmatively, and Ms. Perry's coworker told her that Mr. Baxter had inappropriately texted her in the evening, even asking for "tit pics" on one occasion. This coworker was not the only other young woman in the office of which Ms. Perry heard or had knowledge of Mr. Baxter harassing.

23.

Mr. Baxter also subjected Ms. Perry to physical harassment and unwanted touching. As an example, Mr. Baxter would often come up behind Ms. Perry while she stood at a computer workstation, press the entire front of his body against Ms. Perry's back, and wrap his arms around Ms. Perry to type on the computer keyboard in front of her.

24.

As another example, Mr. Baxter often situated himself directly behind Ms. Perry whenever she needed to lean down for any reason and would stare at her buttocks as if to suggest that he wanted to touch her.

25.

All of Mr. Baxter's comments to and touching of Ms. Perry were heavily tinged with sexual innuendo and made her extremely uncomfortable. She did not welcome any of his advances; she always refused them.

26.

Mr. Baxter's treatment of Ms. Perry was offensive both subjectively and objectively, and it was unwelcome.

<u>Management's Knowledge and Lack of Response to Mr. Baxter's Unlawful Treatment of Ms. Perry</u>

27.

Ms. Perry had a performance review in March 2023 with Amy Hollen, Carlin Vision's Hiring and Human Resources Manager, during which she raised concerns about Mr. Baxter.

28.

During the time between Ms. Perry's hire in October 2022 and the time of her performance review in March 2023, Carlin Vision did not have in place or publicize to its employees any anti-harassment policy or any reporting policy pertaining to

complaints of harassment. Its Equal Employment Opportunity policy did not reference harassment at all, and its Employee Handbook did not list a reporting mechanism for instances of sexual harassment. To Ms. Perry's knowledge, Carlin Vision did not have any sexual harassment policy until a policy comprised of three sentences was posted on an online employee bulletin board on May 17, 2023, a week following Ms. Perry's termination.

29.

Despite Defendant's lack of any policy addressing sexual harassment, or instruction on the reporting thereof, Ms. Perry informed Ms. Hollen that she was continuously being sexually harassed by Mr. Baxter, citing specific examples of the verbal and physical harassment she had endured.

30.

Ms. Perry's complaint was met with dismissiveness by Ms. Hollen, who did not take Ms. Perry's complaint seriously. Instead, Ms. Hollen told her to "handle it [her]self" and that this situation would be a good character-building experience, both at Carlin Vision and in life.

31.

Ms. Perry, feeling humiliated and completely unsupported, went back to work.

32.

Mr. Baxter continued to harass her for the next two months in the same ways he had in the past, including lewd and sexually suggestive comments and unwanted physical touching.

33.

Carlin Vision never did anything to investigate or otherwise take action in response to Ms. Perry's complaint in March 2023 regarding the harassment she was enduring.

34.

Upon information and belief, Ms. Hollen and Dr. Richard Carlin, Carlin Vision's owner, knew of and had previously spoken with Mr. Baxter about his harassment of women at Carlin Vision before Ms. Perry ever worked there.

35.

Carlin Vision was already aware that Mr. Baxter had previously engaged in unlawful behavior, as he had been told by management in the past that he would not have a job if he worked anywhere else.

36.

By continuing to employ Mr. Baxter, Carlin Vision remained tolerant of, permitted, and condoned his harassment of younger women.

<u>Ms. Perry's Second Report Regarding Mr. Baxter's Behavior</u>

37.

Ms. Perry arrived at work on May 10, 2023, wearing a new dress. When Mr. Baxter saw her that morning, he reached out and grabbed her lower abdomen under her belly button.

38.

Ms. Perry asked Mr. Baxter why he did that, to which he responded, "Oh, you have a pooch" or something to that effect.

39.

Ms. Perry spent the rest of the morning shaken and in an anxious state. During her lunch break, she called her mother, Laurel Perry, who advised Ms. Perry to report this incident to management.

40.

After her lunch break, Ms. Perry went to Ms. Hollen's office to report what had occurred with Mr. Baxter earlier that morning. Ms. Hollen pulled Lisa Fargason, one of Ms. Perry's direct supervisors in the Optical Boutique, into this meeting.

41.

Both Ms. Hollen and Ms. Fargason were dismissive of Ms. Perry's complaint. Ms. Fargason responded by saying "That's just Scott. I think he feels like he can tease with you."

42.

Ms. Perry told Ms. Hollen and Ms. Fargason that she felt like she could no longer work with Mr. Baxter. She asked Ms. Hollen if she could be moved to another department in order to not have to continue working near him. Ms. Hollen refused this request.

43.

Ms. Perry then said she would have to quit if Carlin Vision would not do anything to address Mr. Baxter's behavior because she could not continue to work with him and face his harassment. Ms. Hollen told her to take the rest of the day to think about it.

44.

Ms. Perry left work and immediately went to see her mother, who was a patient of Dr. Carlin's. Ms. Perry and her mother decided to go directly to Dr. Carlin to report Mr. Baxter's harassment.

45.

Upon hearing Ms. Perry's account, Dr. Carlin stated that he would investigate and be in touch. Ms. Perry and her mother went home and waited for an update.

<u>Carlin Vision's Termination of Plaintiff's Employment the Same Day that
She Complained of Sexual Harassment</u>

46.

On the same day that Ms. Perry expressed her concern about harassment to

Ms. Hollen and Dr. Carlin, within a few hours, Ms. Hollen called Ms. Perry asking

her to meet with Dr. Carlin, Ms. Fargason, James Fields (another Optician), and Mr.

Baxter at 5:30 P.M.

47.

Though Ms. Perry initially agreed to the meeting, she realized that she had

been taken by surprise as soon as she had hung up, as she did not want to conduct

the meeting with Mr. Baxter in the room. His presence, which already made her feel

unsafe generally, would be incredibly intimidating as she tried to relay his

harassment.

48.

Ms. Perry immediately called Ms. Hollen back to say that she would be there

at 5:30 to speak to all except Mr. Baxter.

49.

Ms. Hollen accused Ms. Perry of refusing to speak to anyone. Ms. Perry

responded to clarify that she was only refusing to speak if Mr. Baxter was there, but

would be happy to talk to the rest of the group without him.

50.

In response to Ms. Perry's expression of concern about having to discuss Mr. Baxter's harassment in his presence, Ms. Hollen told her to email her resignation and return her key card.

51.

Ms. Perry did not want to resign – she only wanted to no longer work near or with Mr. Baxter – so she understood from Ms. Hollen's statement that she was fired, as she was not given an alternative to "resigning" and had no say in the effective date of her separation.

52.

Ms. Perry went back to Carlin Vision later that day hoping to speak with Dr. Carlin and management, and that they would finally recognize that the situation needed to be remedied and she would not be fired after all.

53.

When she arrived, however, she saw everyone sitting in a conference room, including Mr. Baxter. Ms. Perry returned her keycard as instructed by Ms. Hollen and left.

54.

Ms. Perry then immediately went to the Snellville Police Department to file a police report on Mr. Baxter.

55.

Mr. Baxter's verbal and physical harassment during her employment at Carlin Vision, the company's refusal to redress it, and the termination of her employment when she complained about it and asked that it stop, all caused Ms. Perry severe emotional distress, for which she had to seek mental health treatment.

56.

In addition to causing her severe emotional distress, Defendants' treatment caused Ms. Perry financial losses, including but not limited to lost earnings and future wages.

## COUNT I (AGAINST CARLIN VISION)
## SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

57.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

58.

Defendant, through the conduct of Mr. Baxter, discriminated against Plaintiff because of her sex by sexually harassing Plaintiff.

59.

The harassment inflicted upon Plaintiff by Mr. Baxter was unwelcome and was based on her sex.

60.

The harassment that Plaintiff experienced was sufficiently severe and pervasive, objectively and subjectively, as to alter the terms and conditions of her employment and create an abusive and hostile working environment.

61.

Carlin Vision had actual knowledge of the harassment inflicted by Mr. Baxter.

62.

Plaintiff complained to several superiors about the harassment she was experiencing, but nothing was done about it.

63.

Carlin Vision failed or refused to take action to correct the harassing behavior of Mr. Baxter and failed to take all reasonable acts to eliminate sex discrimination from the workplace and prevent it from occurring in the future.

64.

Mr. Baxter's sexual harassment of Plaintiff is causally connected to the termination of her employment, which occurred the same day she complained of his repeated unwelcome sexual comments and touching.

65.

The sexual harassment that Plaintiff experienced caused her to suffer humiliation, emotional distress and mental suffering.

66.

Carlin Vision's discrimination against Plaintiff in the form of sexual harassment caused her to suffer financial losses in the form of lost wages and benefits among other things, all as to be proven at trial.

## COUNT II (AGAINST CARLIN VISION)
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

67.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

68.

Plaintiff is a member of a protected class as a woman.

69.

Plaintiff was qualified for the position she held with Carlin Vision.

70.

Defendants' actions in tolerating sexual comments and touching of a sexual nature directed toward female employees in the workplace evidence Defendant's bias against women based on sex.

71.

Carlin Vision subjected Plaintiff to an adverse employment action when it demanded that she email a resignation letter and turn in her key card, thereby involuntarily terminating her employment.

72.

Plaintiff was treated differently than similarly situated male employees.

73.

Plaintiff suffered damages as a result of Carlin Vision's discriminatory acts, including lost wages and benefits, humiliation, emotional distress, and mental suffering, all as to be proven at trial.

## COUNT III (AGAINST CARLIN VISION) RETALIATION IN VIOLATION OF TITLE VII

74.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

75.

Plaintiff engaged in activity protected under Title VII when she complained to Amy Hollen, Lisa Fargason, and Dr. Carlin regarding the discrimination and harassment that she was experiencing.

76.

The very same day as her last complaint of discrimination and harassment, Defendant Carlin Vision requested a meeting with Plaintiff in which Mr. Baxter would be present. When Plaintiff stated that she could not attend a meeting about the harassment in which her perpetrator would be present, Carlin Vision demanded that she submit her resignation and return her key card.

77.

Plaintiff's separation was involuntary, as she was given no alternative to resigning, had no say in the effective date of her resignation, and did not have advice of counsel before resigning, thus amounting to an adverse employment action.

78.

Carlin Vision terminated Plaintiff's employment.

79.

If Carlin Vision did not terminate Plaintiff's employment directly, then her separation constitutes constructive discharge, as she had no option but to resign, given that Carlin Vision demanded that she submit her "resignation" and did so in response to her stated reluctance to attend a meeting addressed to the harassment of which she had complained and in which the perpetrator would be present.

80.

There is a causal connection between Plaintiff's complaints of discrimination and harassment and the termination of her employment, which thereby constitutes retaliation.

81.

As a result of Defendant Carlin Vision's retaliation as described herein, Plaintiff suffered damages including lost wages and benefits, humiliation, pain and suffering, and other damages all as to be proven at trial.

82.

Carlin Vision acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Plaintiff, authorizing a punitive damages award against Defendant.

## COUNT IV (AGAINST ALL DEFENDANTS) BATTERY

83.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

84.

Defendant Mr. Baxter touched Plaintiff offensively, including on her backside and lower abdomen.

85.

Defendant Mr. Baxter intentionally touched Plaintiff offensively, including on her backside and lower abdomen.

86.

Mr. Baxter's offensive and unwelcome touching of Plaintiff was physically threatening as well as demeaning.

87.

Mr. Baxter is individually liable for his battery of Plaintiff.

88.

Defendant Carlin Vision is vicariously liable for Mr. Baxter's battery of Plaintiff.

## **COUNT V (AGAINST ALL DEFENDANTS)**
## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

89.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

90.

Defendant Mr. Baxter engaged in sexually offensive conduct intentionally directed at Plaintiff.

91.

Mr. Baxter's treatment of Plaintiff was designed to, and did, cause her severe emotional distress.

92.

Plaintiff complained to supervisors about the treatment she was receiving from Mr. Baxter, but nobody did anything about it and instead told her to handle it on her own, which only worsened her emotional distress.

93.

Mr. Baxter's treatment of Plaintiff and Carlin Vision's blatant refusal to do anything to stop it were both outrageous.

94.

Mr. Baxter is individually liable for the emotional distress that he intentionally inflicted on Plaintiff.

95.

Defendant Carlin Vision is vicariously liable for the emotional distress that Mr. Baxter intentionally inflicted on Plaintiff.

96.

Plaintiff suffered damages as a result of the intentional infliction of emotional distress for which Defendants are liable.

## COUNT VI (AGAINST CARLIN VISION)
## NEGLIGENT RETENTION

### 97.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

### 98.

Defendant Carlin Vision owed a duty to Plaintiff as an employee to exercise ordinary care not to hire or retain an employee that it knew or should have known posed a risk of harm to others.

### 99.

Defendant Carlin Vision had knowledge that Mr. Baxter posed a risk of harm to Plaintiff and to other female employees due to his known propensity to engage in sexual harassment and to treat women in demeaning and derogatory ways. Alternatively, Defendant Carlin Vision should have had such knowledge.

### 100.

Because of its knowledge or constructive knowledge of the risk posed to Plaintiff by Mr. Baxter, it was foreseeable to Carlin Vision that Plaintiff would suffer harm if it retained an employee who posed such a risk.

### 101.

Carlin Vision retained Mr. Baxter knowing that he posed a risk of engaging in sexual harassment and other conduct causing distress to Plaintiff and other female

employees, notwithstanding its knowledge of the risk of such harm.

102.

Carlin Vision's retention of Mr. Baxter has caused Plaintiff emotional distress.

103.

Carlin Vision is liable for the damages Plaintiff has suffered as a result of its negligent retention of Mr. Baxter, whose retention has caused Plaintiff and other female employees emotional distress.

104.

Carlin Vision's tortious conduct as alleged in this Complaint is willful and/or reflects such an entire want of care sufficient to raise a presumption of conscious indifference to consequences and entitle Plaintiff to an award of punitive damages.

## COUNT VII
## ATTORNEY'S FEES

105.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

106.

Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense, and as a result Plaintiff is entitled to

recover all of her attorney's fees pursuant to O.C.G.A. § 13-6-11 and other applicable state and federal law.

107.

Plaintiff is entitled to recover her reasonable attorney's fees and costs under Title VII, 42 U.S.C. § 2000e-5(k) and other applicable law.

### **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and requests the following relief:

a) A declaratory judgment that Defendants' practices complained of herein violated Plaintiff's rights under Title VII;

b) A judgment awarding Plaintiff back pay and front pay as provided by Title VII, 42 U.S.C. § 2000e-5 and other applicable law;

c) A judgment awarding Plaintiff her actual, compensatory, consequential, liquidated, punitive, and all other available damages, in an amount to be determined by the enlightened conscience of the jury;

d) Award Plaintiff her attorney's fees;

e) Award Plaintiff pre-judgment and post-judgment interest; and

f) Award Plaintiff all other and further relief as this Court deems just and proper.

Dated: March 4, 2025

**STEMBRIDGE TAYLOR LLC**

*/s/ Lisa D. Taylor*

Lisa Durham Taylor
Georgia Bar No. 235529
lisa@stembridgetaylor.com
3651 Mars Hill Road, Suite 2900B
Watkinsville, Georgia 30677
Telephone: (678) 522-0599

Adina Abrahami
Georgia Bar No. 895619
adina@stembridgetaylor.com
4840 Roswell Road, Suite E300
Atlanta, Georgia 30342
Telephone: (678) 270-5558

Attorneys for Plaintiff